## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

**DAVID ROMANO,**                                             **CASE NO.**

     **Plaintiff,**

**v.**

**SCOTT BESSENT, as Secretary of the**
**DEPARTMENT OF THE TREASURY,**

     **Defendant.**

_____/

## COMPLAINT

Plaintiff, DAVID ROMANO, hereby sues Defendant, SCOTT BESSENT, as Secretary of the DEPARTMENT OF THE TREASURY, and alleges:

## JURISDICTION

1.    This is an action brought under the Rehabilitation Act, codified at 29 U.S.C. §791, et seq. (the Rehabilitation Act of 1972, Sections 501 and 505).

2.    This is an action involving claims which are, individually, in excess of Seventy- Five Thousand Dollars ($75,000.00).

## THE PARTIES

3.    At all times pertinent hereto, Plaintiff, DAVID ROMANO, has been a resident of the State of Florida and employed by Defendant.  Plaintiff is a member of a protected class by virtue of having an actual or perceived physical or mental

disability and/or record of impairment which Defendant is aware of. Further, Plaintiff reported Defendant's unlawful employment practices and has been retaliated against thereafter.

4.    At all times pertinent hereto, Defendant, SCOTT BESSENT, as Secretary of the DEPARTMENT OF THE TREASURY, has been organized and existing under the laws of the United States.  At all times pertinent to this action, Defendant has been an "employer" as that term is used under the applicable laws identified above.  Defendant is Plaintiff's employer as it relates to these claims.

## CONDITIONS PRECEDENT

5.    Plaintiff has satisfied all conditions precedent to bringing this action.

## STATEMENT OF THE ULTIMATE FACTS

6.    Plaintiff began his employment with Defendant in or about February 2018 as a Contractor and currently holds the position of Service Technician.

7.    Plaintiff was a loyal and dedicated employee who received great performance ratings. For at least five years prior to the events at issue, Plaintiff performed limited ticket reader duties as an accommodation, consistently receiving positive reviews of his work performance.

8.    Plaintiff has been and continues to be subjected to disparate treatment, different terms and conditions of employment, and held to a different standard

because of actual or perceived physical or mental disability and/or record of impairment and has been retaliated against after reporting this discrimination.

9.    The disparate treatment and retaliation came at the hands of specifically but not limited to Manager Francoise Williams.

10.    Plaintiff is wheelchair bound and suffers from chronic knee pain, peripheral neuropathy, degenerative joint disease, and chronic migraines, all of which Defendant was aware. On July 5, 2023, Plaintiff submitted medical documentation confirming his medical conditions to the Defendant from Plaintiff's medical provider, Dr. Howard Weiss, from Physical Medicine Specialists. Dr. Weiss recommended sedentary work status with restrictions including walking no more than one hour per day, standing one-third of the day, no bending/stooping, and lifting/carrying no more than five pounds.

11.    On August 16, 2024, during a meeting with Williams, Reasonable Accommodations Coordinator Rosalyn Harrell, and Southeast Area Manager Michael Poe, Plaintiff requested a Reasonable Accommodation (RA) for a 4/10 alternative work schedule (AWS) working from home two days a week to alleviate the anxiety caused by commuting and navigating the office environment. This modified schedule would help reduce the strain caused by his mobility limitations. Plaintiff did not receive an answer during the meeting and was told management would investigate his requests.

3

12.    On August 22, 2024, Plaintiff attended a meeting with Manager Williams and Poe regarding his request for a 4/10 alternative work schedule. Williams stated that she would have to "investigate" because there were allegedly too many employees already working 4/10 schedules. However, Plaintiff confirmed through the shared team calendar that no employees were working 4/10 schedules at that time. Plaintiff referenced the Union Guidebook in support of his request, and Poe agreed that Plaintiff was correct. Poe then approved Plaintiff's 4/10 schedule during the meeting, overriding Williams's objections. Williams openly expressed dissatisfaction with Poe's decision, and from that point forward began targeting Plaintiff for discipline or termination. Specifically, Williams repeatedly questioned Plaintiff's job duties, attempted to alter his position to include tasks she knew he was physically unable to perform, and sought to make his role more demanding in hopes that Plaintiff would quit.

13.    Between August 2024 through September 2024, Plaintiff filed an internal harassment complaint against Williams to the Anti-Harassment Program Office, alleging she was subjecting him to duties inconsistent with his disability restrictions. Plaintiff specifically reported that Williams required him to perform physical ticket work that he had never been assigned in the past, despite his physical restrictions. Plaintiff's received confirmation of this complaint via email from Cynthia Jacobs from the Anti-Harassment Program Office, but he was never

provided with the results until February 2025. No further investigation or corrective action followed.

14.    Shortly after his internal complaint, Williams again began adjusting his responsibilities to add physical duties. Williams told Plaintiff that "it was not fair for everyone else to perform his job" and that she was assigning him physical duties accordingly, despite his objections. These added tasks included bending, stooping, lifting, and moving IT equipment, all which Plaintiff's medical restrictions prohibited. Moreover, other employees were not performing his job duties.

15.    On October 28, 2024, Williams added physical tasks to Plaintiff's job responsibilities inconsistent with his reasonable accommodations, which included bending, stooping, lifting, and moving equipment, despite his wheelchair-bound condition. Plaintiff objected and reminded Williams of his restrictions. Williams responded that "she was the manager."

16.    On November 4, 2024, Plaintiff contacted an Equal Employment Opportunity (EEO) Counselor Linda Ricketts and reported in writing through Teams via the Agency's anti-harassment program that Williams had assigned him physical duties inconsistent with his disability. Specifically, Plaintiff reported that Williams insisted he performed physical tickets that required handling equipment he could not move.

5

17.    On November 6, 2024, Plaintiff submitted a new RA request to continue performing the same sedentary ticket reader duties he had performed for the past seven years. The RA contained updated medical documentation from Dr. Weiss included additional diagnoses of anxiety and depression and reiterated restrictions prohibiting walking, climbing, standing, kneeling, bending, pushing/pulling, and lifting.

18.    On or around December 19, 2024, Plaintiff received the Notice of Right to File and submitted his formal EEO complaint on the same day alleging that Williams retaliated against him for requesting accommodations and subjected him to discriminatory job modifications inconsistent with his medical restrictions.

19.    On January 7, 2025, EEO Specialist Cynthia Washington was assigned as the Reasonable Accommodation Coordinator (RAC) for Plaintiff's pending RA requests. Washington stated she was aware of Plaintiff's medical condition but unaware of his prior EEO activity.

20.    On the morning of January 16, 2025, Plaintiff was injured on the job when his wheelchair got caught on a rug, throwing him to the floor. Plaintiff struck his shoulder, back, both wrists, and head, leaving him bruised, sore, and with a severe headache that worsened the following day. Plaintiff immediately sought guidance from his supervisor, Williams, on how to complete an accident report.

Despite leaving a message on Teams, calling her office and cell phone, and leaving a voicemail, Plaintiff received no response.

21.    Approximately five hours later, Williams called Plaintiff and asked how he was doing. Plaintiff advised that he was assisting a customer at that moment and would call her back in 20 minutes. When Plaintiff returned the call, Williams failed to answer or respond further. Plaintiff ultimately completed the accident report on his own and filed a Worker's Compensation (WC) claim.

22.    Subsequently, WC Specialist Brian Hanford contacted Plaintiff to check on his condition and inquired whether Williams had filed an Employees' Compensation Operations and Management Portal (ECOMP) report. Plaintiff advised that he was unsure. Hanford confirmed that he had repeatedly emailed and called Williams, but she provided no response. Hanford continued checking in with Plaintiff throughout the next few days, during which Plaintiff reported persistent pain, mobility issues, ringing in his ears, and hearing loss in his right ear.

23.    On January 20, 2025, Williams finally called Plaintiff, stating that she would file an ECOMP report "when she gets around to it," and further told Plaintiff that he was "causing her too many problems."

24.    On or around January 24, 2025, Plaintiff had not been contacted by anyone regarding his job related injury and sought treatment from his primary

physician, Dr. Boyd Evans, and Advanced Practice Registered Nurse (APRN) Tracy McKenzie with Millennium Physician Group to check on his injuries.

25.    On January 27, 2025, Human Resources Specialist Daryl Farrar issued a memorandum confirming receipt of Plaintiff's workers compensation claim and noting that the claim reflected no missed work and no medical expenses at that time.

26.    On January 28, 2025, Plaintiff attempted to work through pain but was hassled by Williams, who told him that taking hours off for pain management was "unacceptable." On January 31, 2025, Plaintiff attended a medical evaluation for his head, shoulder, wrists, and back, with x-rays scheduled for February 24, 2025, with Coastal Integrative Imaging Center.

27.    On February 3, 2025, an interactive RA meeting was held with Plaintiff, Williams, Poe, and Washington. Plaintiff requested adjustments including raising his desk and moving his filing cabinet for his wheelchair and service dog. Williams and Poe then threatened Plaintiff and told him he would be transferred if he could not perform all functions, and Williams directly asked about his service dog after learning he had filed a prior harassment complaint. Plaintiff contends that this meeting focused less on his RA requests and more on attacking him for his prior harassment complaint, escalating his anxiety to the point he had to leave and see his doctor.

8

28.    On February 4, 2025, the Agency began an internal anti-harassment investigation into Plaintiff's complaint against Williams. Shortly thereafter, on February 10, 2025, the anti-harassment investigation concluded, finding conflicting accounts and recommending case closure without action, while management would continue monitoring the work environment.

29.    That same day, Plaintiff met with Assistant Director David Burt of the U.S. Treasury Department to discuss his allegations. Plaintiff explained that after seven years of performing his duties without issue, management was now claiming he was not doing his job, which he attributed to retaliation for his complaints. Burt admitted he was unsure how to proceed and provided no guidance.

30.    During February 2025 through March 2025, Plaintiff was actively attending physical therapy for his medical condition at Coastal Integrative Healthcare with Dr. Omar Adberhman. Notably, this therapy was approved via email by Williams on December 10, 2024, for January 2025 through February 2025. Plaintiff continues to attend physical therapy three times a week, which is approved.

31.    On May 16, 2025, the Agency closed its investigation into Plaintiff's EEO complaint citing no discrimination, no failure to accommodate, and no harassment. The case was then closed without corrective action, and Plaintiff was not informed of any remedies or outcome.

32.     In July 2025, Plaintiff obtained a medical service dog to help manage the anxiety caused by Defendant's failure to accommodate his disabilities; however, management, including Williams, has also questioned and resisted this accommodation.

33.     Plaintiff continues to be denied the reasonable accommodations necessary to perform his job safely and effectively including but not limited to, performing sedentary ticket reader duties, ignored restrictions against bending, stooping, lifting, or moving equipment, refused to adjust his workstation for wheelchair and service dog access, and has resisted recognizing his service dog as a legitimate accommodation. As a result, Plaintiff has been forced to continue working in a hostile environment while enduring ongoing pain and anxiety.

34.     Plaintiff has retained the undersigned to represent their interests in this cause and is obligated to pay a fee for these services. Defendant should be made to pay said fee under the statutes referenced above.

## COUNT I
## DISABILITY DISCRIMINATION

35.     Paragraphs 1 through 34 above are re-alleged and incorporated herein.

36.     This count sets forth a claim for discrimination on the basis of Plaintiff's actual or perceived mental or physical disability and/ or record of impairment, brought under 42 U.S.C. §12101, et seq.

10

37.    Plaintiff has been a victim of discrimination on the basis of actual or perceived disability and/or record of impairment. During the course of Plaintiff's employment by Defendant, Plaintiff was treated differently than similarly situated employees who are non-disabled, not perceived as disabled, or do not have a comparable record of impairment to Plaintiff.

38.    Defendant is liable for the differential treatment of Plaintiff, which adversely affected a term, condition, or privilege of Plaintiff's employment with Defendant as those terms are used in the applicable statutes.

39.    Defendant controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

40.    In essence, the actions of agents of Defendant, which were each condoned and/or ratified by Defendant, were disability/perceived disability-based and in violation of the laws set forth herein.

41.    The discrimination complained of herein affected terms, conditions, and privileges of Plaintiff's continued employment by Defendant.

42.    Defendant's acts and omissions constituted intentional discrimination and unlawful employment practices based upon disability and/or perceived disability and/or his record of having an impairment, under the laws cited herein.

11

43.     As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are occurring at present, and likely will continue in to the future. Plaintiff is entitled to equitable/injunctive relief.

**COUNT II**
**DISABILITY DISCRIMINATION (Failure to Accommodate)**

44.     Paragraphs 1 through 34 are realleged and incorporated herein by reference.

45.     This is an action against Defendant for the failure to accommodate Plaintiff and to engage in the interactive process with him.

46.     Plaintiff has been the victim of discrimination on the basis of his disability or perceived disability in that Defendant failed and refused to accommodate him as set forth above and refused to engage in the interactive process with him,.

47.     Defendant is liable for the refusal to accommodate and engage in the interactive process with Plaintiff, which adversely affected the terms and conditions of Plaintiff's employment with Defendant. Defendant controlled the actions and

inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

48.    In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were disability/perceived-disability based and in violation of the laws set forth herein.

49.    The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant. The events set forth herein lead, at least in part, to adverse actions against Plaintiff.

50.    Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon disability or perceived disability or his record of having an impairment under the laws enumerated herein.

51.    As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiff is entitled to injunctive/equitable relief.

## COUNT III
## RETALIATION

52.    Paragraphs 1 through 34 are re-alleged incorporated herein by reference.

53.    This is an action against Defendant for unlawful retaliation after Plaintiff reported unlawful employment practices adversely affecting him.

54.    Defendant is an employer as that term is used under the applicable statutes referenced above.

55.    The foregoing unlawful actions by Defendant were purposeful.

56.    Plaintiff voiced opposition to unlawful employment practices during his employment with Defendant and has been the victim of retaliation thereafter.

57.    The events set forth herein have led, at least in part, to adverse actions against Plaintiff alleged in part above.

58.    Plaintiff is a member of a protected class because he reported unlawful employment practices and has been the victim of retaliation thereafter.   He also requested accommodations and was the victim of retaliation thereafter.  There is thus a causal connection between the reporting of the unlawful employment practices and the adverse employment action taken thereafter.

59.    As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, expense, loss

of benefits, embarrassment, humiliation, damage to reputation, illness, lost wages, lost opportunities, loss of capacity for the enjoyment of life, and other tangible and intangible damages.  These damages are continuing and are permanent.  Plaintiff is entitled to injunctive/equitable relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendant for the following:

(a)     that process issue and this Court take jurisdiction over this case;

(b)     that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c)     enter judgment against Defendant and for Plaintiff awarding all legally-available general and compensatory damages and economic loss to Plaintiff from Defendant for Defendant's violations of law enumerated herein;

(d)     enter judgment against Defendant and for Plaintiff permanently enjoining Defendant from future violations of law enumerated herein;

(e)     enter judgment against Defendant and for Plaintiff awarding Plaintiff attorney's fees and costs;

(f)     award Plaintiff interest where appropriate; and

(g)     grant such other further relief as being just and proper under the circumstances.

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

Dated this 5th day of November, 2025.

Respectfully submitted,

<u>/s/ Marie A. Mattox</u>
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P.A.
203 North Gadsden Street
Tallahassee, FL 32301
Telephone:  (850) 383-4800
Facsimile:   (850) 383-4801
Marie@mattoxlaw.com
Secondary emails:
marlene@mattoxlaw.com
michelle@mattoxlaw.com
discovery@mattoxlaw.com

ATTORNEYS FOR PLAINTIFF